IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICKI C. JAEGER,

    Plaintiff,                      No. CIV S-05-2115 GGH

    vs.

MICHAEL J. ASTRUE,[1]            <u>ORDER</u>
Commissioner of
Social Security,

    Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). For the reasons that follow, the court recommends plaintiff's Motion for Summary Judgment be denied, the Commissioner's Motion for Summary Judgment be granted, and judgment be entered for the Commissioner.

\\\\\

\\\\\

---

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, born January 2, 1968, applied for disability benefits on August 28, 2000. (Tr. at 105.) Plaintiff alleged she is disabled due to depression and panic disorder. (Tr. at 114.) In a decision dated October 18, 2002, ALJ Mark C. Ramsey determined plaintiff was not disabled. On May 15, 2003, the Appeals Council granted plaintiff's request for review and remanded the matter for consideration by the ALJ, directing him to obtain additional medical evidence; obtain medical expert evidence to clarify the nature and severity of plaintiff's impairments, if warranted; further evaluate plaintiff's mental impairments in accordance with 20 C.F.R. §§ 404.1520a and 416.920a, and document the technique described in those regulations; further evaluate plaintiff's subjective complaints in accordance with 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p; further consider plaintiff's maximum residual functional capacity with rationale, and request if necessary, treating source to provide further evidence and/or clarification regarding what plaintiff can do despite the impairment; if necessary, request a vocational expert to clarify the effect of assessed limitations on the occupational base and resolve conflicts between the expert's evidence and the Dictionary of Occupational Titles; conduct further proceedings, if applicable, to determine whether drug addiction or alcoholism is a contributing factor material to the finding of disability. (Tr. at 92-93.)

On remand, ALJ Ramsey determined that plaintiff was not disabled.[2] The ALJ

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

>Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is

2

made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through June 30, 2003.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).
>
> 4. The medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR 404.1527 and 416.927).
>
> 7. The claimant has the residual functional capacity for all levels of exertion. She does not have a severe physical impairment. She is limited to simple unskilled work and work not requiring acute attention to detail such as parts assembly.
>
> 8. The claimant's past relevant work as photo counter clerk did not require the performance of work-related activities

---

appropriate.
  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
  Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
  Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
  The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3

|   |   |   |
|---|---|---|
| | | precluded by her residual functional capacity (20 CFR 404.1565 and 416.965). The vocational expert further indicated that considering the claimant's vocational factors and residual functional capacity, the claimant could perform other jobs existing in vocationally significant numbers in the national economy such as a janitor, which is a medium unskilled job, a motel maid, which is a light unskilled job, and a busboy in a restaurant, which is a medium unskilled job. |
| | 9. | The claimant's medically determinable cyclothymic - mild to moderate, and substance dependent disorder do not prevent the claimant from performing her past relevant work or other jobs noted above. |
| | 10. | The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(c) and 416.920(c)). |

(Tr. at 24-25.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Erred in Finding Plaintiff Could do her Past Work as Photo Counter Clerk; B. Whether the ALJ Failed to Identify the Number of Jobs in the National Economy; C. Whether the ALJ Failed to Properly Address Whether Plaintiff's Mental Impairments Equaled The Listings; D. Whether the ALJ Failed to Properly Address All of the Medical Expert's Testimony Regarding Plaintiff's Residual Functional Capacity, and Failed to Resolve Ambiguities in That Testimony; E. Whether the ALJ Failed to Address Dr. Rhandhawa's Statements Regarding Attendance, and the Vocational Expert's Testimony Based on those Statements; and F. Whether the ALJ Impermissibly Relied on Medical Experts to Provide Vocational Testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v.

Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

A. Whether the ALJ Failed to Properly Address Whether Plaintiff's Mental Impairments Equaled The Listings

Plaintiff contends that the medical expert testified that plaintiff's mental impairments might equal a listing, but the ALJ ignored this testimony.

The "Listing of Impairments" ("Listings") describe various impairments of thirteen bodily systems, which presumptively preclude a person from working. 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). At the third step of the disability analysis, the ALJ determines whether a person's condition either "meets" or "equals" a listing. A mere *diagnosis* of a listed impairment is not sufficient. Specific findings included in each listing also must be met. See, e.g., Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985). Alternatively, other diagnostic tests, or the combined effects of various conditions, may demonstrate the "equivalent" of the specific required findings. See, e.g., Sullivan v. Zebley, 493 U.S. 521, 531 (1990); Marcia v. Sullivan, 900 F.2d 172 (1990). In sum, however, unless an impairment is as severe as and has lasted as long as described in the listing, a person is not presumptively disabled. Young, 911 F.2d at 183.

\\\\\

\\\\\

5

In this case, the ALJ found that plaintiff's cyclothymic disorder,[3] mild to moderate, and substance dependent disorder were severe but that they did not meet or equal the listings. He then stated that plaintiff's affective and anxiety disorders did not satisfy the requirements of listing 12.04. He did not find that these latter two impairments were severe. (Tr. at 21.)

The testimony of Dr. Walter, the medical expert, was that her methadone use would cause her concentration and attention to be somewhat flattened, and that as a result she could not do activities that require acute attention to detail such as putting together parts or filing. (Id. at 529-30.) He diagnosed substance dependence (prescribed),[4] cyclothymic disorder, and anxiety which is moderately controlled by medication. (Id.) In regard to the listings, the medical expert testified that it would be up to the ALJ to determine if plaintiff equaled the listings in regard to the three aforementioned disorders, but it would be difficult for the expert himself to ascertain due to the prescribed methadone program. (Id. at 531.) He stated that whether plaintiff equals the listing should possibly be considered. (Id. at 532.) His hesitation was whether the substance dependence disorder should be applied to a listing because methadone here was used as a prescription medication, not as an illicit drug under listing 12.09, and therefore it is not considered an illness, although it has the side effects mentioned above. (Id. at 532-33.) Side effects of medication are not considered in looking at the listings, however. (Id. at 533.)

Dr. Walter also completed a psychiatric review technique form on August 6, 2003. He determined that plaintiff had cyclothymic disorder, substance dependent disorder (due to

---

[3] Cyclothymic Disorder is a chronic bipolar disorder consisting of short periods of mild depression and short periods of hypomania. These symptoms may last a few days to a number of weeks. The onset is separated by short periods of normal mood. Individuals with cyclothymia are never totally free of symptoms of either depression or hypomania for more than a number of months at a time. www.psychnet-uk.com; see also DSM IV, 301.13

[4] Contrary to plaintiff's contention that this expert diagnosed substance addiction disorder, Dr. Walter crossed out the word addiction on the form and instead wrote in dependent, so that he characterized plaintiff's ailment as substance dependent disorder. (Id. at 385.) See Plaintiff's Mot. at 7:14-15.

prescribed methadone program), and mild to moderate anxiety disorder when not on medication, but that she did not meet a listing. (Id. at 385, 393.) He did, however, cite listing 12.09 as limiting plaintiff only insofar as her methadone dependence affected her ability to concentrate, to maintain social functioning, to respond to work pressures, and to follow detailed instructions. (Id. at 395, 399.) He concluded that plaintiff's consistency on the job would be affected by her mood swings, that she should not do assembly type activities or work requiring acute attention to detail, i.e. no parts assembly. (Id. at 400.)

        Specifically, this medical expert found plaintiff to be only mildly or slightly limited in activities of daily living, maintaining social functioning, making judgments on simple work related decisions, interacting appropriately with the public and coworkers, and responding appropriately to changes in a work routine. (Id. at 395, 399, 400.) She was moderately limited only in responding to work pressures, understanding, remembering and carrying out detailed instructions, and maintaining concentration, persistence and pace. Plaintiff was not limited at all in understanding, remembering and carrying out simple instructions. (Id.) These limitations are consistent with the ALJ's finding that plaintiff does not equal the listings. Dr. Walter, although deferring to the ALJ's prerogative to consider the listings, clearly thought plaintiff did not meet the listings but could work with limitations, as his medical source statement indicates. This written opinion is consistent with plaintiff's ability to work with the limitations set forth by the ALJ.

        In regard to "substance dependent disorder," plaintiff's testimony was that she last used alcohol in 2000, heroin in 1996, cocaine in 1992, and marijuana three to four years ago. (Id. at 531, 517-18.) Plaintiff was taking methadone for six years prior to the hearing. (Id. at 529.) The ALJ found that plaintiff had not abused drugs recently and therefore past drug use was not a contributing factor material to a finding of disability. He added that plaintiff's methadone program did not interfere with her residual functional capacity which in part limited her to simple, unskilled work which does not require acute attention to detail. (Id. at 23-24.)

7

Therefore, in examining the listings, plaintiff's dependence on methadone will not be considered in regard to listing 12.09. It is only considered in regard to how it affects her residual functional capacity.

The ALJ properly found that anxiety disorder was not a severe impairment because it was controlled by medication, according to the medical expert. (Id. at 530.) A condition which can be controlled or corrected by medication is not disabling. See Montijo v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983) (rib condition controlled with antibiotics not considered disabling). The ALJ was entitled to rely on this medical expert's opinion. The opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when supported by other substantial evidence in the record. See Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Furthermore, the ALJ reasoned that plaintiff's affective and anxiety disorders were "not accompanied by the marked limitation in daily activities, social functioning, and/or concentration, persistence or pace required by listing 12.04." (Tr. at 21.)

In regard to cyclothymic disorder, Dr. Walter found it to be mild to moderate, similar to a mild form of bipolar condition. He described it as involving shorter and more abrupt mood swings which do not last as long as those in a bipolar disorder. (Id. at 385, 529-30.) The ALJ was also entitled to rely on this opinion.

Plaintiff does not suggest which listing she thinks she equals. She merely states that cyclothymic disorder comes under listing 12.04 and anxiety disorders are addressed by listing 12.06. She has failed to elaborate why she believes she meets or equals any of the specified listings, and has cited no evidence in the record to support her claim, other than the diagnoses listed above. Plaintiff merely argues that the ALJ ignored Dr. Walter's suggestion that she might equal a listing. Bare contention, unsupported by explanation or authority, may be

8

deemed waived. See Seattle School Dist., No. 1 v. B.S., 82 F.3d 1493, 1502 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue). The court will not deem the contention waived, but finds it without merit for the following reasons.

Longstanding social security policy requires the judgment of a physician or psychologist on the issue of equivalence. SSR 96-6p.[5] The ALJ obtained a medical advisor and found plaintiff's impairments did not meet or equal a listed impairment based on this expert's opinion which the ALJ found was supported by the record.

For example, the ALJ pointed to Dr. Paul's record which indicated plaintiff has a good response to medications and was coming off methadone in September, 2001. (Tr. at 23.) In October, 2001, plaintiff's bipolar disorder was mild. (Id.) In January, 2001, Dr. Rhandawa found that plaintiff could comprehend simple and complex instructions, but could not carry out detailed and complex tasks. (Id. at 211.) She could accept instructions for supervisors and interact with coworkers and the public. (Id.) Although this psychiatrist opined that plaintiff was not likely to maintain regular attendance due to exacerbation of her present condition, with continuing and sustained treatment on medication, it was *likely* that she could maintain regular attendance in the near future, such as six months to a year from that time. (Id.)

The ALJ further noted that in August, 2002, plaintiff's GAF rating was 65,[6] despite plaintiff's complaints of depression. (Id. at 23, 432.) In 2003, plaintiff was more under control, and was taking medication which decreased her paranoia, helped her sleep, and kept her mood swings at bay. As a result, her bipolar disorder was stable and her mood swings were

---

[5] Social Security Rulings are final opinions and policy of the Social Security Administration, and as such are binding on ALJs. Paulson v. Bowen, 836 F.2d 1249, 1252 n. 2 (9th Cir.1988).

[6] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV"). According to the DSM IV, a GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM IV.

9

1  decreased. (Id. at 23, 417.)  The ALJ concluded that her bipolar disorder was recently controlled
2  by medication and emotional difficulties were not severe enough to preclude her from simple
3  unskilled work. (Id.)  The record also indicates that plaintiff was having a good response to
4  medications, and her panic attacks were decreasing as was her depression. (Id. at 298.)  Her
5  moods were more stable. (Id.)

6        It is plaintiff's burden to establish that her impairment meets or equals a listing,
7  and this she has not done.  Torres v. Secretary of Health & Human Services, 870 F.2d 742, 745
8  (1st Cir. 1989).  No more is required of the ALJ who is not required to explain why plaintiff
9  failed to meet each section of the listings, as pointed out by defendant.  Gonzalez v. Sullivan, 914
10 F.2d 1197, 1200-01 (9th Cir. 1990).

11        B.  Plaintiff's Residual Functional Capacity

12        Plaintiff also claims that the ALJ failed to address all of Dr. Walter's testimony
13 regarding plaintiff's limitations, specifically where he stated that she could not work five days a
14 week for eight hours a day due to reduced attention and concentration.  Dr. Walter's statement
15 must be read in context with his statements immediately following this one.  Although he did
16 make this statement, he followed by explaining that because concentration and attention are her
17 major problems, if she were limited to simple, unskilled work where attention to detail is not
18 acute, she could do this work. (Tr. at 535.)  This testimony is consistent with his psychiatric
19 review technique form in which he found that plaintiff could work if she did no assembly type
20 activity or work requiring acute attention to detail, because her consistency on the job would be
21 affected. (Id. at 400.)

22        Dr. Randhawa's assessment is older, dating back to January 6, 2001, before
23 plaintiff had shown much more improvement.  He predicted this improvement as he stated that
24 although at that time plaintiff was not likely to maintain regular attendance, her prognosis was
25 good in that he expected she could do so in the near future, "anywhere from six months to a
26 \\\\\

1  year."[7]  (Id. at 211.)  Plaintiff states that her unsuccessful attempts to stabilize her condition

2  through multiple medications since Dr. Randhawa's evaluation indicate that her condition did not

3  improve as predicted.  Other evidence shows that it did improve.  See discussion Section A.

4  supra.  The ALJ's reliance on these statements constitutes substantial evidence in the record.

5  Plaintiff also asserts that the vocational expert testified that if plaintiff could not

6  maintain regular attendance, missing one day a month or more, she could not do the stated jobs,

7  and that this testimony supports Dr. Randhawa's opinion.  (Id. at 546.)  This testimony is entitled

8  to be disregarded as it is based on a hypothetical that was not supported by plaintiff's *present*

9  condition.[8]  The ALJ was entitled to rely on Dr. Walter's testimony regarding plaintiff's present

10 ability to maintain attendance.

   C. Past Relevant Work

12 Plaintiff contends that the ALJ erred in finding that plaintiff could do her past

13 work as a photo counter clerk because she never did this work, but worked as a photo lab

14 manager, which is a different job.  Plaintiff testified that her past job as photo lab manager

15 involved being at the front counter, taking orders from customers, helping them decide what

16 would fit their needs, giving prices, and occasionally answering the phone.  (Tr. at 505, 555.)

17 She also testified to an example where a company would come in with an idea, and she would

18 discuss various ideas for the company's campaign.  (Id. at 538.)  The vocational expert testified

19 that the job of photo counter clerk is unskilled light work, and does not require acute attention to

---

[7] Dr. McCarthy is very critical of portions of Dr. Randhawa's report, particularly his opinion that plaintiff showed "good insight to go off methadone."  (Id. at 166.)  Dr. McCarthy thought methadone was necessary to plaintiff's stability, and that when she attempted to go off it, she relapsed to heroin.  (Id. at 167.)  Dr. McCarthy did not address the impact of methadone dependence on plaintiff's functional capacity and the record indicates that plaintiff can work even if she remains methadone dependent for the indefinite future.

[8] Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel."  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  The ALJ is free to accept them if they are supported by substantial evidence or reject them if they are not.  Id. at 756-757.

11

detail. (Id. at 538, 540.) He testified that plaintiff could do that job; however, plaintiff contends that her description pertained to the job of photo lab manager, which was skilled in nature, and therefore she could not do it.

It makes no difference what the title of the job is called. The fact is that plaintiff described her job as she actually performed it and the ALJ found that she could still do this work.

The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements. It is used by the SSA to classify jobs as skilled, unskilled, or semiskilled. (Id.) Each job is assigned a number reflecting how long it generally takes to learn the job, termed "specific vocational preparation" ("SVP") time. (Id.)

The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1). The DOT describes photo lab counter clerk as light work:

> Receives film for processing, loads film into equipment that automatically processes film for subsequent photo printing, and collects payment from customers of photofinishing establishment: Answers customer's questions regarding prices and services. Receives film to be processed from customer and enters identification data and printing instructions on service log and customer order envelope. Loads film into equipment that automatically processes film, and routes processed film for subsequent photo printing. Files processed film and photographic prints according to customer's name. Locates processed film and prints for customer. Totals charges, using cash register, collects payment, and returns prints and processed film to customer. Sells photo supplies, such as film, batteries, and flashcubes.

DOT 249.366-010.

Plaintiff claims that her past work did not include some of these duties, and that she is not able to do all the required tasks of this job. Although the description of photo counter clerk in the Dictionary of Occupational Titles conflicts with plaintiff's description of her past

12

1  work, this circuit has found that the DOT does not necessarily control over vocational expert
2  testimony. Johnson v. Shalala, 60 F.3d 1428, 1436 (9th Cir.1995) ("It was . . . proper for the
3  ALJ to rely on expert testimony to find that the claimant could perform the two types of jobs the
4  expert identified, regardless of their [DOT] classification").

5  Plaintiff is informed that "The ALJ was entitled to rely on plaintiff's own
6  statements to determine the requirements of her past work." Khuu v. Chater, 12 F. Supp. 2d
7  1028, 1031, n. 6 (C.D. Cal. 1997). Social Security Ruling 82-62 states: "[t]he claimant is the
8  primary source for vocational documentation, and statements by the claimant regarding past work
9  are generally sufficient for determining the skill level; exertional demands and nonexertional
10 demands of such work."

11 Plaintiff bears the burden of proving she suffers from a physical or mental
12 impairment that makes her unable to perform "past relevant work." Andrews v. Shalala, 53 F.3d
13 1035, 1040 (9th Cir.1995). Plaintiff cannot merely show she is incapable of performing the
14 particular job she once did; she must prove she cannot return to the same type of work. Villa v.
15 Heckler, 797 F.2d 794, 798 (9th Cir.1986). In determining whether a disability applicant can
16 perform past work, the Commissioner may consider work as it was actually performed, or as it is
17 normally performed in the national economy. The ALJ determines the demands of a past job and
18 compares the demands to current RFC. Villa, 797 F.2d at 798.

19 Furthermore, the ALJ need not consider the Dictionary of Occupational Titles if
20 he finds the plaintiff able to perform her past relevant work. The Ninth Circuit has stated, "[t]he
21 ALJ uses the Dictionary only if he determines that the plaintiff cannot perform her past relevant
22 work." Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990).

23 Even if there was some miscommunication and the vocational testimony focused
24 on the job of photo counter clerk as described in the DOT, the ALJ's reliance on this testimony
25 was harmless as there was testimony that plaintiff could do a variety of other jobs. An error
26 which has no effect on the ultimate decision is harmless. Curry v. Sullivan, 925 F.2d 1127, 1121

(9th Cir. 1990).

### D. Jobs in Significant Numbers

Plaintiff claims that the vocational expert did not testify whether, aside from her past work as photo counter clerk, the other recommended jobs such as motel maid, janitor and busboy existed in significant numbers in the national economy.

A claimant is not disabled if, considering her age, education, and work experience, she can engage in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the immediate area in which she lives. See Barker v. Secretary of Health and Human Serv., 882 F.2d 1474, 1478 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(2)(A) (1982 & Supp.1987)).  Further, "[w]hether there are a significant number of jobs a claimant is able to perform with her limitations is a question of fact to be determined by a judicial officer." Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir.1986).  Moreover, the issue is whether there are jobs that a claimant could perform, not whether there are any openings at such positions.  20 C.F.R. §§ 404.1566(a), 416.966(a); Torske v. Richardson, 484 F.2d 59, 60 (9th Cir.1973) ("the relevant inquiry is not whether the claimant is able to obtain employment at some substantial activity that exists in the national economy but whether the claimant is able to engage in such activity").  The Ninth Circuit has not determined what number of jobs meets the "significant number" requirement. Barker, 882 F.2d at 1478-79 (finding that the regulations discuss numbers of jobs, not percentage).  Significant numbers must be more than two isolated jobs, but are not determined by a ratio to population in the area.  Martinez, 807 F.2d at 775; Barker, 882 F.2d at 1478-79.

Here, the other jobs suggested by the vocational expert are unskilled.  As pointed out by defendant, according to the regulations, "approximately 2,500 separate sedentary, light, and medium occupations can be identified, each occupation representing numerous jobs in the national economy which do not require skills or previous experience and which can be performed after a short demonstration or within 30 days." 20 C.F.R. § 404, Subpt. P, App. 2 § 203.00(a).

Although the ALJ should have questioned the vocational expert regarding the number of jobs in the national economy, it is not necessary to remand on this issue as common sense and experience dictates that the specific jobs identified by the expert exist in sufficient numbers.

### E. Medical Expert Testimony Regarding Vocational Issues

Plaintiff asserts that the medical expert improperly testified about vocational matters.

Medical experts may testify to functional limitations. Hampton v. Barnhart, 184 Fed. Appx. 642, 644 (9th Cir. 2006). The ALJ is required to incorporate the medical expert's relevant findings into the hypothetical to the vocational expert. Comer v. Massanari, 35 Fed. Appx. 528, 530 n. 2 (9th Cir. 2002). The vocational consultant's opinion must accurately reflect the limitations described by the medical expert. Andrews v. Shalala, 53 F.3d 1035, 1037 (9th Cir. 1995). The medical expert can assist in determining whether impairments become disabling. Orcutt v. Barnhart, 2005 WL 2387702 (C.D. Cal. 2005).

Dr. Walter testified that plaintiff could do simple, unskilled work that did not require assembly of parts due to her lack of acute attention to detail. He also testified, in trying to explain by way of example, that housecleaning would fall into the category of jobs not requiring acute attention to detail. (Id. at 536.) He further stated that plaintiff could not do intricate assembly line work, such as putting a pen together at a fast pace. (Id. at 543-44.) The last two statements were in response to the ALJ's questions which attempted to get further explanation of what these limitations meant. The portion of Dr. Walter's testimony upon which the ALJ relied concerned plaintiff's functional limitations. The ALJ did not rely on Dr. Walter for vocational testimony, but utilized the vocational expert.

### CONCLUSION

The court finds the ALJ's assessment to be fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS ORDERED that

15

plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Motion for Summary Judgment is GRANTED, and Judgment is entered for the Commissioner.

DATED: 3/27/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Jaeger2115.ss.wpd